UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

_____
                                                )
In re:                                          )
                                                )        Chapter 11
COMMUNITY INTERVENTION SERVICES, INC.,          )
COMMUNITY INTERVENTION SERVICES                 )
HOLDINGS, INC., SOUTH BAY MENTAL HEALTH         )        Case No. 21-40002-EDK
CENTER, INC., and FUTURES BEHAVIOR              )
THERAPY CENTER, LLC                             )
                                                )        (Jointly Administered)
                               Debtors.         )
_____)

**ORDER (A) APPROVING PROCEDURES GOVERNING DEBTOR'S
PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS OF FUTURES
BEHAVIOR THERAPY CENTER, LLC, INCLUDING CERTAIN UNEXPIRED
LEASES AND EXECUTORY CONTRACTS, PURSUANT TO SECTIONS 363
AND 365 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF LIENS, CLAIMS,
AND INTERESTS; (B) APPROVING FORM AND MANNER OF NOTICE OF SALE;
(C) APPROVING DEBTOR'S ASSUMPTION OF ASSET PURCHASE AGREEMENT
PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE;
AND (D) GRANTING RELATED RELIEF**

Upon consideration of the Debtor's Motion For an Order (A) Approving Procedures

Governing Debtor's Proposed Sale of Substantially All Assets of Futures Behavior Therapy

Center, LLC, Including Certain Unexpired Leases and Executory Contracts, Pursuant to Sections

363 and 365 of the Bankruptcy Code, Free and Clear of Liens, Claims, and Interests; (B)

Approving Form and Manner of Notice of Sale; (C) Approving Debtor's Assumption of Asset

Purchase Agreement Pursuant to Section 365 of the Bankruptcy Code; and (D) Granting Related

Relief [Docket No. 12] (the "Sale Procedures Motion") (capitalized terms used but not otherwise

defined herein have the meanings given to them in the Sale Procedures Motion or the APA (as

defined below)), pursuant to which Debtor Futures Behavior Therapy Center, LLC ("Futures" or

the "Debtor") seeks the entry of an order of this Court establishing procedures governing the

Debtor's proposed sale (the "Proposed Sale") of substantially all of Futures' assets utilized by Futures in operating its business (collectively, the "Assets"), including without limitation (i) Futures' rights under two leases of real property at which Futures operates its facilities (the "Leases"), (ii) certain personal property, including equipment, furniture and inventory, (iii) certain executory contracts with third parties (together with the Leases, the "Assumed Contracts"), (iv) certain permits and licenses authorizing the provision of certain services to Futures' clients (to the extent transferable), and (v) certain other miscellaneous, specified assets as set forth in that certain Asset Purchase Agreement dated as of January 5, 2021 (the "APA") between the Debtor and FBTC Transitional Sub, LLC, a Delaware limited liability company ("FBTS"), including, without limitation, the right to use Futures' trade names and other intellectual property, to FBTS, or its eligible designee, or to such other entity that submits the highest or otherwise best offer to acquire the Assets as determined through the sale process to be governed by the proposed sale procedures described herein; and the Court having conducted a hearing on the Sale Procedures Motion on January 14, 2021; and the Court having reviewed the Sale Procedures Motion and considered the arguments of counsel and the matters addressed at such hearing; and the Court having found and determined that the relief sought in the Sale Procedures Motion is in the best interests of the Debtor, its estate and the creditors thereof, and all parties in interest and that the legal and factual bases set forth in the Sale Procedures Motion establish good cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor; it is hereby:

**FOUND AND DETERMINED THAT**[1]:

---

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding by Fed. R. Bankr. P. 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.

A.      This Court has jurisdiction to consider the Sale Procedures Motion in accordance

with 28 U.S.C. §§ 157 and 1334.  Venue of the Debtors' Chapter 11 cases and the Sale

Procedures Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a

core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent

with Article III of the United States Constitution.

B.      The Court entered the Agreed Interim Order (I) Authorizing Debtors To Use

Prepetition Collateral, Including Cash Collateral and (II) Granting Adequate Protection Pursuant

to 11 U.S.C. §§ 361 and 363, and (III) Scheduling a Final Hearing [Docket No. 55] (the "Cash

Collateral Order").

C.      In the Sale Procedures Motion and at the hearing on the Sale Procedures Motion,

the Debtor demonstrated that good and sufficient notice of the relief granted by this Order has

been given and no further notice is required.  A reasonable opportunity to object or be heard

regarding the relief granted by this Order has been afforded to those parties entitled to notice and

all other interested parties.

D.      The Sale Notice is appropriate and reasonably calculated to provide all interested

parties with timely and proper notice of this Order, the Sale Procedures (as defined herein), the

Auction (as defined herein), the Proposed Sale, and the Sale Hearing (as defined herein), and any

and all objection deadlines related thereto, and no other or further notice is required of the

foregoing.

E.      The Sale Procedures are fair, reasonable, and appropriate and are designed to

maximize recovery with respect to the Proposed Sale.

F.      The Assumption and Assignment Procedures (as defined herein) are reasonable

and appropriate and consistent with the provisions of Section 365 of the United States

Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Fed. R. Bankr.

P. 6006.  The Assumption and Assignment Procedures and the Assumed Contracts Notice (as

defined herein) provide an adequate opportunity for interested parties to assert any objections to

the Debtor's assumption and assignment of executory contracts and unexpired leases.

G.     The Debtor's incurrence of the obligations arising under or in connection with the

APA, including the provisions related to payment of the Break-Up Fee, is (i) upon the Debtor's

assumption of the APA pursuant to Section 365 of the Bankruptcy Code, an actual and necessary

cost of preserving the Debtor's estate within the meaning of Section 503(b) of the Bankruptcy

Code, to the extent the break up fee is approved by the Court; (ii) of substantial and material

benefit to the Debtor's estates, its creditors and all other parties in interest, because, among other

things, such provisions induced FBTS to submit a bid that will serve as a minimum or floor bid

for the Assets and increase the likelihood that the best possible purchase price for the Assets will

be realized, to the extent the break up fee is approved by the Court; (iii) represented by the

Debtors to be the product of good faith and arm's-length negotiations among the Debtor and

FBTS; (iv) represented by the Debtors to be reasonable and appropriate in light of the size and

nature of the Proposed Sale and the efforts that have been and will be expended by FBTS, and

(v) represented by the Debtors to be necessary to induce FTBS to enter into and continue to be

bound by the APA and to continue to pursue the sale of the Assets.

H.     The Debtors represent that the Debtor's assumption of the APA is in the best

interest of the Debtor, its estate and the creditors thereof, and other parties in interest and

represents the reasonable exercise of sound and prudent business judgment by the Debtor.  The

Debtor has met all requirements of Section 365(b) of the Bankruptcy Code to assume the APA.

I.       Entry of this Order is in the best interests of the Debtor, its estate and the creditors thereof and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.       The Sale Procedures Motion is GRANTED as provided for herein.

2.       Any objections to the relief granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**Approval of Solicitation Procedures and Sale Procedures[2]**

3.       The solicitation procedures set forth in paragraph 19 the Sale Procedures Motion are approved in their entirety.

4.       The submission of purchase offers for the Assets shall be governed by the procedures attached hereto as Exhibit A (the "Sale Procedures"), which Sale Procedures are hereby approved.  The Sale Procedures shall govern the Proposed Sale, including, without limitation, with respect to the submission of competing bids, the actions of "Qualified Bidders" (as defined in the Sale Procedures), and the conduct of the Auction (as defined herein).

5.       Notwithstanding any limitations provided for in any due diligence information, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtor and its estate shall be authorized to provide due diligence information to potential bidders or Qualified Bidders, provided that such potential bidders or Qualified Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtor.  The Debtor and its estate are not responsible for, and shall have no liability with respect to, any information

---

[2] The failure to specifically include or reference any particular provision of the Sale Procedures in the Sale Procedures Motion or in this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Sale Procedures are approved in their entirety, as  modified by  this Order.

obtained by, or provided to, any potential bidders or Qualified Bidders in connection with the
Sale Procedures and the Proposed Sale, _provided_ that the information was provided in
accordance with this Order.

6.        The Debtor shall solicit competing bids for the Assets to be submitted utilizing an
"Asset Purchase Agreement" (as defined in the Sale Procedures) substantially in the form of the
APA attached as Exhibit A to the Sale Motion,[3] and competing bidders are directed to utilize the
form of Asset Purchase Agreement made available to them by the Debtor and its advisors to
submit competing bids.

7.        The deadline for submission of competing bids to acquire the Assets eligible for
the Debtor's consideration to be "Qualified Bids" (as defined in the Sale Procedures) in
accordance with the Sale Procedures is 4:00 p.m. (prevailing Eastern Time) on February 3, 2021
(the "_Bid Deadline_").  Any party that does not submit a bid by the Bid Deadline will not be
allowed to: (a) submit any offer after the Bid Deadline or (b) participate as a bidder in the
Auction.

8.        FBTS is hereby deemed a Qualified Bidder, and the APA attached as Exhibit A to
the Sale Motion is deemed a Qualified Bid in connection with the bidding process, the Auction,
and the Proposed Sale.

9.        All Qualified Bidders submitting a Qualified Bid are deemed to have submitted to
the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the
terms and conditions of the sale or transfer of the Assets identified under the applicable Asset
Purchase Agreement.

---

[3] Capitalized terms used and not defined herein shall have the meanings ascribed to them in the attached Sale
Procedures or (if not defined in the Sale Procedures) the Sale Procedures Motion.

10.      The Debtor shall, in consultation with Capital One, National Association (the "Agent"), which is the agent for the Debtors' prepetition senior secured lenders, and with any statutory committee appointed in this case (the "Committee"), have the right as they may reasonably determine to be in the best interests of their estates to carry out the Sale Procedures, including, without limitation, to:  (a) determine which bidders are Qualified Bidders and (b) determine which bids are Qualified Bids.  The Debtors shall, by February 4 at 4:30 p.m. notify any party submitting a bid of its determination that such bid is not a Qualified Bid (a "Disqualified Bidder" and file with the Court a status report regarding the number and identity of Qualified bids and Disqualified bids received. A Disqualified Bidder shall have until February 8, 2021 at 12:00 p.m. to object to such disqualification by filing such objection with this Court.

11.      If one or more Qualified Bids in addition to FBTS's Qualified Bid pursuant to the APA, are received by the Bid Deadline, an auction among the Qualified Bidders (the "Auction") shall be held on February 10, 2021 commencing at 10:00 a.m. (prevailing Eastern time) and shall be conducted by the Debtor and its advisors as provided for by the Sale Procedures at a location and in a manner timely communicated to all entities entitled to attend the Auction. If no Qualified Bid other than FBTS's Qualified Bid pursuant to the APA is received before the Bid Deadline, no Auction shall be conducted and FBTS shall be deemed the Winning Bidder.

12.      If the Auction is conducted, each Qualified Bidder attending the Auction shall be required to confirm that it has not engaged in any collusion, within the meaning of section 363(n) of the Bankruptcy Code, with respect to the bidding or the Proposed Sale.  Only the Debtor, FBTS, any other Qualified Bidder that has timely submitted a Qualified Bid, and Agent as well as counsel and the advisors to each of the foregoing shall be permitted to attend the Auction.  At the conclusion of the Auction, the Debtor shall determine, in consultation with the Agent, which

Qualified Bid is the "Winning Bid" and which Qualified Bid is the "Back-Up Bid" (each as

defined in the Sales Procedures), each as it relates to the Auction.

**Break-Up Fee and Stalking Horse Protections**

13.      Subject to the filing by FBTS of a statement of its expenses incurred in

connection with the Proposed Sale and such additional information as FBTS may elect to provide

in support of the Break-Up Fee, the Break-Up Fee is conditionally APPROVED in the amount of

$350,000.00 and shall be payable by the Debtor from the proceeds of an Alternative Transaction

(as defined in the APA), pursuant to the terms of the APA.  The Break-Up Fee (i) shall, if

payable, and to the extent determined by this Court, constitute an allowed administrative expense

claim against the Debtors' estates pursuant to Sections 503(b)(1) and 507(a)(2) of the

Bankruptcy Code, and (ii) shall be paid from  the proceeds of the Alternative Transaction, in

accordance with the terms of this Order and the APA, without further order of this Court.

**Notice of Proposed Sale; Sale Hearing**

14.      Notice of the Proposed Sale provided in the following manner, coupled with the

Assumed Contracts Notice (as defined herein) are reasonably calculated to provide good,

effective, and sufficient notice to any affected party of the Proposed Sale and of the opportunity

to exercise any rights affected by the Sale Procedures Motion as it relates to the Sale Procedures,

Auction, Proposed Sale, Sale Hearing (as defined herein), and the assumption and assignment of

the Assumed Contracts for purposes of Rules 2002, 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure, and such notices are hereby approved. The Debtor's assumption of the

APA pursuant to Section 365 of the Bankruptcy Code, including, without limitation, the Break-

Up Fee payable to FBTS subject to the terms and conditions set forth in the APA and this Order,

is hereby approved.

15.     No later than January 20, 2021, the Debtor will promptly serve a copy of each of
(A) this Order, (B) notice of the Proposed Sale substantially in the form attached as <u>Exhibit B</u>
(the "<u>Sale Notice</u>"), (C) the Sale Motion (without exhibits), (D) the Supplemental Disclosure
Regarding Debtors' Motion to Sell All Assets of Futures Behavioral Therapy Center, LLC
substantially in the form attached <u>as Exhibit D</u> (the "<u>Supplemental Disclosure</u>"); and (E) the
Order Regarding Hearing by Zoom Video Transmission upon (i) counsel to the United States
Trustee, (ii) counsel to the Agent, (iii) counsel to any creditors' committee (once appointed), or,
if such committee is not represented by counsel, then, to the members of such committee or their
respective counsel, (iv) any entities other than the Agent known to hold a lien or security interest
in any of the Assets, and (v) all parties on the regular service list including all parties that have
requested notice and service of pleadings in the Debtors' Chapter 11 case.  Service to the entities
listed in clauses (i) through (iii) and (v) may be made by email, including through the Court's
CM/ECF system to such parties' counsel registered as users of such system in this Chapter 11
case, and service to the entities listed in clause (iv) shall be made by overnight delivery or by
United States first class mail.

16.     Additionally, the Debtor will, no later than January 20, 2021, serve a copy of (A)
this Order, (B) the Sale Notice, (C) the Sale Motion (without exhibits), (D) the Supplemental
Disclosure; and (E) the Order Regarding Hearing by Zoom Video Transmission; by United
States mail upon (i) the Internal Revenue Service, (ii) the United States Attorney for the District
of Massachusetts, (iii) the Attorney General of the Commonwealth of Massachusetts, (iv) each of
the Debtor's federal and state taxing authorities, and any federal, state or local governmental
agency who has or exercises any licensing, registration or permitting authority over the Debtor or
any of the Assets, including the Massachusetts Department of Early Education and Care, (v) all

non-Debtor parties to the Assumed Contracts, (vi) all relevant environmental regulatory agencies, (vii) all entities that have requested notice under Fed. R. Bankr. P. 2002, and (viii) all other known, non-employee creditors of the Debtor.  The Sale Notice will inform such parties that a copy of the Sale Procedures may be obtained by making a written request to counsel to the Debtor. The Debtor may provide notice of the Proposed Sale to its employees in such manner, and through such channels, as the Debtor in the exercise of its business judgment deems appropriate.

17.    The Debtor will promptly post a copy of the Sale Notice, this Order, Sale Procedures, Sale Motion and the Supplemental Disclosure on the website of the Debtors' counsel Casner & Edwards, LLP, and will otherwise make the Sale Notice, this Order, and Sale Procedures available to prospective purchasers of the Assets through the administration of the Solicitation Procedures by the Debtors' investment banker Duff & Phelps Securities, LLC ("D&P").

18.    Any objections to the Sale Motion, including objections to the assumption and/or assignment of any Assumed Contract, must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the local rules of the Court, (d) be filed by 4:00 p.m. (prevailing Eastern Time) on February 12, 2021 (the "Objection Deadline") with the Office of the Clerk, United States Bankruptcy Court, 300 State Street, Springfield, MA 01105, and (e) be served so as to be received by the Objection Deadline by the following parties (the "Notice Parties"):

    a.  attorneys for the Debtors, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, Attn:  Michael J. Goldberg, E-mail: goldberg@casneredwards.com;

    b.  attorneys for the Agent, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL 60661-3693, Attn: Attn:  Paul T. Musser, Esq., E-mail: paul.musser@katten.com;

      c.   attorneys for FBTS, Quarles & Brady LLP, 411 East Wisconsin Avenue, Suite 2400 , Milwaukee, WI 53202-4426, Attn:  Ryan P. Haas, Esq., E-mail: Ryan.Haas@quarles.com and Christopher Combest, Esq., E-mail: Christopher.Combest@quarles.com; and

      d.   the Office of the United States Trustee, 446 Main Street, 14th Floor, Worcester, MA  01608, Attn: Stephen Meunier, Esq., E-mail: stephen.meunier@usdoj.gov.

19.      Failure to file an objection to the Proposed Sale (a "<u>Sale Objection</u>") on or before the Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing (as defined herein) or thereafter, of any objection to the Sale Motion, to entry of the Sale Order, and/or to the consummation and performance of the Proposed Sale contemplated by the APA or any Asset Purchase Agreement with the Winning Bidder or the Back-Up Bidder, and (b) for purposes of Section 363(f) of the Bankruptcy Code, shall constitute "consent" to the entry of the Sale Order and consummation of the Proposed Sale and all transactions related thereto.

20.      On February 16, 2021 at 12:30 p.m. (prevailing Eastern time), a hearing (the "<u>Sale Hearing</u>") will be held before the undersigned Judge of the United States Bankruptcy Court to consider approval of the Winning Bid in respect of which the Debtor (i) will seek authority pursuant to Section 365 of the Bankruptcy Code to assume and assign to the Winning Bidder the Assumed Contracts designated for assignment by the Winning Bidder, and (ii) seek entry of the Sale Order authorizing the sale of the Assets to the Winning Bidder.  Such hearing shall be conducted utilizing Zoom or a similar videoconference service with instructions for appearing at the hearing set forth in a separate order of this Court. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court at the Sale Hearing.

## **Assumption and Assignment Procedures**

21.        The notice attached hereto as <u>Exhibit C</u> (the "<u>Assumed Contracts Notice</u>"), and

the following procedures governing the assumption and assignment of the Assumed Contracts

(the "<u>Assumption and Assignment Procedures</u>") are hereby approved. The Debtor will promptly

transmit by United States first class mail to each non-Debtor party to the executory contracts

identified as potential Assumed Contracts notice of the proposed potential assumption and

assignment of the Assumed Contracts in substantially the form of the Assumed Contracts Notice,

notifying such non-Debtor parties of the proposed potential assumption and assignment of such

Assumed Contracts and of the deadline for objecting to the proposed assumption and assignment

or to assert any sums owed for cure or pecuniary loss under such Assumed Contracts not

specified by the Debtor in such the Assumed Contracts Notice.  Each schedule of Assumed

Contracts to be appended as *Exhibit A* to the Assumed Contracts Notice shall identify the non-

Debtor parties to the Assumed Contracts in alphabetical order and identify the corresponding

contract, as specified by Fed. R. Bankr. P. 6006(f). Any non-Debtor party to an Assumed

Contract (a "<u>Contract Party</u>") seeking to assert that any defaults, conditions or pecuniary losses

under any Assumed Contract (other than as set forth in the column entitled "<u>Cure Amount</u>" for

such Assumed Contract on <u>Exhibit A</u> to the Assumed Contracts Notice) must be cured or

satisfied in order for such contract to be assumed and/or assigned (collectively, the "<u>Cure</u>

<u>Obligations</u>") or who otherwise objects to the proposed assumption and assignment of such

Assumed Contract for any reason, shall be required to file and serve an objection ("<u>Cure</u>

<u>Objection</u>") setting forth with specificity any and all Cure Obligations which such party asserts

must be cured or satisfied with respect to such Assumed Contract and any and all objections to

the proposed assumption and assignment of such Assumed Contract by no later than February

12, 2021 at 4:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline"). Cure

Objections must be prepared, filed and served in accordance with the Procedures Governing

Cure Objections, attached as *Exhibit B* to the Assumed Contracts Notice, which procedures are

hereby approved.  Notice of the proposed assumption and assignment of the Assumed Contracts

provided in compliance with this Order shall be deemed to satisfy the notice and procedural

requirements of Section 365 of the Bankruptcy Code and Fed. R. Bankr. P. 6006 without need

for the Debtor to file a separate motion or omnibus motions to assume and assign the Assumed

Contracts.

### Miscellaneous

22.     The Debtor is authorized and empowered to take or perform such actions and

expend such funds as may be necessary to implement the sale process authorized by this Order,

subject to the authority granted to the Debtor under this Court's order approving the Debtor's

post-petition use of cash collateral and any related budget governing the Debtor's expenditures.

23.     The Debtor is authorized to conduct the Proposed Sale without the necessity of

complying with any state or local bulk transfer laws or requirements.

24.     In the event that there is a conflict between this Order or the Sale Procedures, on

the one hand, and the Sale Procedures Motion, on the other hand, this Order and the Sale

Procedures shall control and govern, and this Order shall control in the event of any conflict with

the Sale Procedures.

25.     This Order shall be effective immediately upon entry, and any stay of orders

provided for in Fed. R. Bankr. P. 6004(h) or 6006(d) or any other provision of the Bankruptcy

Code, the Bankruptcy Rules or the local rules of this Court is expressly waived.  The Debtor is

not subject to any stay in the implementation, enforcement or realization of the relief granted in

this Order, and may, in its sole discretion and without further delay, take any action and perform

any act authorized or approved under this Order.

26.      This Court shall retain exclusive jurisdiction with respect to all matters arising

from or related to the implementation or interpretation of this Order.


Dated: January 15, 2021

_____
Hon. Elizabeth D. Katz
United States Bankruptcy Judge

## Exhibit A

Set forth below under the heading "The Sale Procedures" are the sale procedures (the "Sale Procedures") to be employed in connection with the proposed sale of certain tangible and intangible assets (the "Assets") of the Debtor Futures Behavior Therapy Center, LLC ("Futures" or the "Debtor"), in connection with the jointly administered chapter 11 cases of Futures and its three affiliates (collectively, the "Debtors") pending in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"), lead case number 21-40002-EDK.

The Debtor agreed to that certain asset purchase agreement, dated January 5, 2021 with FBTC Transitional Sub, LLC, a Delaware limited liability company ("FBTS") pursuant to which FBTS will acquire the Assets on the terms and conditions specified therein (together with the schedules and related documents thereto, the "APA," a copy of which is filed with the Bankruptcy Court). The sale transaction pursuant to the APA is subject to competitive bidding as set forth herein. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the APA.

## ASSETS TO BE SOLD

The Debtors seeks to consummate a sale of substantially all of the Assets, as described in Section 1.1 of the APA.  The sale of the Assets is on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or estate, except to the extent set forth in the APA or in the asset purchase agreement of the Winning Bidder or Back-Up Bidder, as the case may be (as defined herein), as approved by the Bankruptcy Court.  Except as otherwise provided in such approved asset purchase agreement, all of the Debtor's right, title and interest in and to each Asset to be acquired shall be sold free and clear of all liens, claims, interests and encumbrances (collectively, the "Encumbrances"), and such Encumbrances will attach solely to the net proceeds of the sale.

## THE SALE PROCEDURES

Bidding Process.  The Debtor shall have the sole right to (i) determine, in consultation with the Agent and with any statutory committee appointed in the Debtors' Chapter 11 cases ("Committee"), whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence reviews, (iii) receive offers from Qualified Bidders, (iv) give notice to all parties with respect to the Sale Procedures and the Auction relating to the Assets, and (v) in consultation with the Agent and any Committee, evaluate, and negotiate, any bid.

Reservation of Rights.  The Debtor, in consultation with the Agent and any Committee, may (i) designate, in its business judgment, which Qualified Bid (as defined below), if any, is the highest or otherwise best offer and (ii) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in the Debtor's sole discretion exercised in consultation with the Agent and the Committee, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Sale Procedures, or (c) contrary to the

best interests of the Debtor, its estate and creditors.  The Debtor reserves the right to withdraw the Sale Motion at any time prior to Bankruptcy Court approval of the Proposed Sale, subject, however, to the rights of FBTS under the APA.

Due Diligence.  Unless a specific exception is granted by the Debtor, in consultation with the Agent and any Committee, each bidder must complete all required due diligence prior to the submission of its bid.  The Debtor will continue to provide due diligence information to potential bidders who so request by contacting Eric Coburn of Duff & Phelps, Telephone: (917) 692-6283, Email: Eric.Coburn@duffandphelps.com.  The Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined herein) or to any person that the Debtor, in consultation with the Agent and any Committee, determines is not reasonably likely to be a Qualified Bidder.  The Debtor will condition due diligence disclosures upon a bidder's execution of a confidentiality agreement in a form satisfactory to the Debtor.

Minimum Amount of Competing Bids.  Any competing offer to acquire the Assets must have a value of not less than $450,000 more than the cash purchase price ($7,500,000) payable by FBTS under the APA.  The Debtor will take into account any assumed liabilities and any adjustments to nominal cash purchase price components of competing bids to compare competing bids on their economic terms and their value to the Debtor and its creditors.  Notably, the Debtor will take into consideration a bidder's experience in providing behavioral health services and their prospects for reasonably prompt approval for necessary licenses and certificates to operate Futures' behavioral health business.

Required Bid Documents.  .  Unless otherwise indicated below, all competing bids must include the following information/documents (the "Required Bid Documents"), which must be received by the Bid Recipients (as defined below) by the Bid Deadline:

- A legally-binding offer to purchase substantially all of the Assets, pursuant to a proposed asset purchase agreement (an "Asset Purchase Agreement") that is in the form of the APA and contains substantially all of the terms and conditions contained in the APA (except for an increased purchase price) and otherwise contains terms in the aggregate that are no less favorable to the Debtor's estate than those of the APA, as determined by the Debtor, in consultation with the Agent and any Committee, marked with any proposed changes from the APA (from which Sections 6.5 and 6.11 shall be deemed omitted and inapplicable to any competing bid) and providing for the offeror's purchase of the Assets on an "as is, where is" basis, for a purchase price consideration (consisting of cash and assumed liabilities) having a value of not less than $7,950,000.00 (the "Initial Minimum Bid") and not subject to any contingencies other than entry of an order of the Bankruptcy Court authorizing the Debtor's sale of the

2

Assets free and clear of liens, claims and interests in form and substance customary for Section 363 asset sales of similar nature, and the regulatory approvals and other closing conditions specified in the APA and the Sale Motion;

- A certified check or wire transfer representing a good faith deposit (the "Deposit"), in the amount of $375,000, payable to the order of Casner & Edwards, LLP, the Debtor's attorneys, who will deposit and hold the Deposit in escrow pending the completion of the sale process and the disposition of the Deposit pursuant to the bidder's Asset Purchase Agreement and the Sale Procedures;

- Written evidence satisfactory to the Debtor and Agent of the bidder's ability to consummate its proposed purchase of the Assets;

- Full disclosure of the identity of each entity that will be participating in such bid, including any proposed designee(s).  Further, each bid must provide sufficient financial and other information regarding both the bidder and all other parties participating in the bid to satisfy the Debtor and Agent with respect to the requirements enumerated in Section 363(m) of the Bankruptcy Code or as otherwise provided for elsewhere herein;

- Written evidence that the bidder has obtained authorization and approval from its Board of Directors (or comparable governing body) with respect to the submission of its offer, or a representation that no such authorization and approval is required;

- Evidence of the qualifications and capacity of the bidder to obtain the necessary licenses and certifications necessary to proceed to a closing of the Proposed Sale;

- Identification of the Assumed Contracts that the Qualified Bidder wishes to assume and details of the Qualified Bidder's ability to provide adequate assurance of future performance to the counterparties to such Assumed Contracts;

- The bidder's acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Asset Purchase Agreement; and (iv) is not entitled to any

expense reimbursement, break-up fee, or similar type of payment in
connection with its bid; and

- It contains such other information as may be reasonably requested by the
Debtor, in consultation with the Agent and any Committee.

<u>Bid Deadline</u>.  To be considered a timely bid, the bid containing the Required Bid
Documents **must be delivered so as to be received not later than 4:00 p.m.
(prevailing Eastern time) on February 3, 2021 (the "<u>Bid Deadline</u>")** by the
following advisors to the Debtors and the Agent (the "<u>Bid Recipients</u>"):

**Debtors' Counsel**
Casner & Edwards, LLP
Attn:  Michael J. Goldberg, Esq.
303 Congress Street
Boston, MA 02210
E-mail:  goldberg@casneredwards.com

**Debtors' Investment Banker**
Duff & Phelps Securities, LLC
Attn:  Eric Coburn
55 East 52nd Street
Floor 31
New York, NY 10055
E-mail:  Eric.Coburn@duffandphelps.com

**Agent's Counsel**
Katten Muchin Rosenman LLP
Attn:  Paul T. Musser, Esq.
525 W. Monroe Street
Chicago, IL 60661-3693
E-mail: paul.musser@katten.com

<u>Qualified Bids</u>.  To constitute a "<u>Qualified Bid</u>" the proposal must include each of the
Required Bid Documents listed above, be accompanied by the required $375,000
deposit (which must be delivered to Debtors' Counsel with the bid), and:

- Be timely received by the Bid Recipients.

- Provide information satisfactory to the Debtor and the Agent that the
bidder is reasonably likely to be able to consummate the proposed
transaction if selected as the Winning Bidder.

- Not be subject to or conditioned upon any financing contingencies.

- Not be conditioned on the outcome of due diligence.

4

- Be binding on each entity or partner participating in the bid.

- Not request or entitle the bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment.

- Provide for the closing of such transaction within a time frame that is no longer than the time frame provided for by the APA, except as may otherwise be agreed to by the Debtor in consultation with the Agent and any Committee.

- Contain written evidence of the qualifications and capacity of the bidder to obtain the necessary licenses and certifications necessary to proceed to a closing of the Proposed Sale.

A bidder that submits a Qualified Bid will, subject to the Debtor's determination exercised in consultation with the Agent and the Committee be a "Qualified Bidder". The offer of FBTS set forth in the APA is deemed to constitute a Qualified Bid and FBTS is deemed to be a Qualified Bidder with respect to any Auction (as defined below). The Debtor, in consultation with the Agent and any Committee, may modify one or more of the Qualified Bid requirements as to any one or more bidders, but is not required to do so.

The Debtors shall, not later than February 4, 2021, notify any party submitting a bid of its determination that such bid is not a Qualified Bid (a "Disqualified Bidder"), and such Disqualified Bidder shall have until February 8, 2021 at 12:00 p.m. to object to such disqualification by filing such objection with the Bankruptcy Court.

Irrevocability of Bids.  Bids shall be deemed irrevocable offers to acquire the Assets and shall remain irrevocable and subject to acceptance by the Debtor until the Debtor, in consultation with the Agent, have designated the Winning Bid and the Back-Up Bid (each described below) and the Bankruptcy Court has approved the Debtor's acceptance of the Winning Bid and designation of the Back-Up Bid, at which time any other bids shall be deemed rejected and such rejected bidders' Deposits returned.

Notification of Qualified Bidders; No Qualified Bids.  Promptly after the Bid Deadline, but in no event later than February 4, 2021, the Debtor, in consultation with the Agent and any Committee, shall determine, and notify each bidder by February 4, 2021, whether such bidder has submitted acceptable Required Bid Documents such that it is deemed a Qualified Bidder.  If the Debtor does not receive any Qualified Bids other than the APA, the Debtor will not hold an auction, FBTS will be named the Winning Bidder (as defined below) upon the expiration of the Bid Deadline, and the Debtor shall seek approval of the sale of the Assets to FBTS pursuant to the APA at the Sale Hearing.

Auction.  After the Bid Deadline, the Debtor in consultation with the Agent shall review each Qualified Bid on the basis of financial and contractual terms and the factors relevant

to the transaction process, including those factors affecting the speed and certainty of consummating the proposed transaction, and may negotiate with Qualified Bidders regarding improvements or alterations of their bids.  If at least two Qualified Bids (including FBTS's Qualified Bid pursuant to the APA) are submitted, then, after all such bids have been so reviewed and negotiated, the Debtor shall conduct an auction (the "Auction") with respect to the Proposed Sale.  Each Qualified Bidder shall at the commencement of the Auction be required to confirm that it has not engaged in any collusion, within the meaning of section 363(n) of the Bankruptcy Code with respect to any bids submitted or not submitted in connection with the Sale.  **The Auction shall take place beginning at 10:00 a.m. (prevailing Eastern Time) on February 10, 2021 and will be hosted by the Debtor and/or its professionals at such location(s) and/or through such means as the Debtor and its professionals determine are most appropriate to the circumstances presented, including without limitation the number and location of Qualified Bidders and the circumstances surrounding COVID-19 and governmental responses thereto. The Debtor currently expects that the Auction will be conducted through a videoconference involving Qualified Bidders, utilizing Zoom or a similar videoconference service. The Debtor shall notify all Qualified Bidders who have submitted Qualified Bids of the arrangements for the Auction once determined.**  Only the Debtor, FBTS, any other Qualified Bidder that has timely submitted a Qualified Bid and is eligible to participate at the Auction, Agent, and counsel and the advisors to each of the foregoing shall be permitted to attend the Auction.  At the Auction, each Qualified Bidder's auction bid(s) shall be deemed to be on the same terms and conditions as such bidder's Qualified Bid as set forth in its Asset Purchase Agreement, except for the specific changes stated in any bid (e.g., increased offer price, assumption of liabilities, waiver of conditions, etc.) and otherwise as expressly agreed upon by the Debtor in consultation with the Agent and any Committee.

Conduct of the Auction.  The Debtor may, in consultation with the Agent, from time to time waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are: (i) not inconsistent with the Sale Procedures Order, the APA, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the local rules of the Bankruptcy Court, or any order of the Bankruptcy Court entered in connection with the Debtors' chapter 11 cases, and (ii) disclosed to each Qualified Bidder.  Subject to the Debtor's fiduciary duties as debtor and debtor-in-possession, the Debtor will present, and request Bankruptcy Court approval of, the Winning Bid (as defined below) at the Sale Hearing.

Minimum Bid Increment. As required by the APA, the minimum bid increment at the Auction after the Initial Minimum Bid will be $100,000.00.

Selection of Winning Bid and Back-Up Bid.  At the conclusion of the Auction, the Debtor, in consultation with the Agent, will designate, and then announce, the highest or otherwise best bid for the Assets (the "Winning Bid") and the Qualified Bidder submitting such bid (the "Winning Bidder").  The Debtor will also, in consultation with the  Agent, designate the second-best bid to constitute the back-up bid in case the

Winning Bidder fails to consummate the Proposed Sale (the "Back-Up Bid"), and the Qualified Bidder submitting such bid (the "Back-Up Bidder"). The Debtor's designation of the Winning Bid, Winning Bidder, Back-Up Bid, and Back-Up Bidder is subject to approval of the Bankruptcy Court through entry of an order so providing following the conclusion of the hearing to consider approval of the Sale Motion and the Proposed Sale (the "Sale Hearing"). Upon entry of such approval order (the "Sale Order"), the Proposed Sale shall be consummated as provided by and pursuant to the terms and conditions of the Winning Bidder's Asset Purchase Agreement (as it may be modified to reflect the Winning Bid and any related agreements between the Winning Bidder and the Debtor approved by the Sale Order). The Back-Up Bid shall remain open for acceptance by the Debtor until the first to occur of (i) closing under the Winning Bidder's Asset Purchase Agreement or (ii) the passage of ninety (90) days after the date of entry of the Sale Order; provided, however, after the passage of thirty (30) days from the date of entry of the Sale Order, the Back-Up Bidder may seek an order of the Bankruptcy Court terminating the Back-Up Bid for cause. If the Winning Bidder defaults, then, upon the Debtor's acceptance of the Back-Up Bid pursuant to the Sale Order, the Debtor and the Back-Up Bidder shall proceed to closing under the Back-Up Bidder's Asset Purchase Agreement, including as it may be modified by agreement of the Debtor and the Back-Up Bidder consistent with the Sale Order.

Acceptance of Qualified Bid. The Debtor, in consultation with the Agent, intends to seek approval of the highest or otherwise best Qualified Bid received. The Debtor's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Debtor's acceptance of the bid. The Debtor will have accepted a bid only when the bid has been approved by the Bankruptcy Court and the Debtor has executed the final form of the Asset Purchase Agreement embodying the sale of the Assets as approved by the Bankruptcy Court pursuant to the Sale Order.

Return of Deposits. All Deposits shall be returned to each bidder not selected by the Debtor as the Winning Bidder or the Back-Up Bidder (as defined below) no later than five (5) business days following the conclusion of the Auction.

**SALE HEARING**

The Sale Hearing will be held as provided by the Order of the Bankruptcy Court approving the foregoing Sale Procedures.

## **Exhibit B**

[Proposed Sale Notice]

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

_____

In re:                                          )
                                                )
                                                )   Chapter 11
COMMUNITY INTERVENTION SERVICES, INC.,          )
COMMUNITY INTERVENTION SERVICES                 )
HOLDINGS, INC., SOUTH BAY MENTAL HEALTH         )   Case No. 21-40002-EDK
CENTER, INC., and FUTURES BEHAVIOR              )
THERAPY CENTER, LLC                             )
                                                )   (Jointly Administered)
                               Debtors.         )
_____)

**NOTICE OF (A) INTENDED SALE OF SUBSTANTIALLY ALL ASSETS OF
FUTURES BEHAVIOR THERAPY CENTER, LLC, INCLUDING CERTAIN
UNEXPIRED LEASES AND EXECUTORY CONTRACTS, PURSUANT TO
SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF
LIENS, CLAIMS, AND INTERESTS; (B) SALE PROCEDURES; (C) DEADLINES
FOR SUBMITTING COUNTEROFFERS OR OBJECTIONS; AND (D) HEARING**

To Creditors and Parties in Interest:

     **PLEASE TAKE NOTICE THAT**, pursuant to Sections 105, 363 and 365 of the
Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 6006, and pursuant to the Debtor's
Motion For Authority to Sell Substantially All Assets of Futures Behavior Therapy Center, LLC,
Including Certain Unexpired Leases and Executory Contracts, Pursuant to Sections 363 and 365
of the Bankruptcy Code, Free and Clear of Liens, Claims, and Interests filed on January 5, 2021
[Docket No. 10] (the "Sale Motion"), Futures Behavior Therapy Center, LLC ("Futures" or the
"Debtor") intends to sell substantially all of Futures' assets utilized by Futures in operating its
business (collectively, the "Assets"), including without limitation (i) Futures' rights under two
leases of real property at which Futures operates its facilities (the "Leases"), (ii) certain personal
property, including equipment, furniture and inventory, (iii) certain executory contracts with
third parties (together with the Leases, the "Assumed Contracts"), (iv) certain permits and
licenses authorizing the provision of certain services to Futures' clients (to the extent
transferable), and (v) certain other miscellaneous, specified assets as set forth in that certain
Asset Purchase Agreement dated as of January 5, 2021 (the "APA") between the Debtor and
FBTC Transitional Sub, LLC, a Delaware limited liability company ("FBTS"), including,
without limitation, the right to use Futures' trade names and other intellectual property, to FBTS,
or its eligible designee, or to such other entity that submits the highest or otherwise best offer to
acquire the Assets as determined through the sale process to be governed by the proposed sale
procedures established by the Bankruptcy Court (the "Proposed Sale"). The Proposed Sale is to
be made pursuant to the Asset Purchase Agreement between the Debtors and FBTS attached as
Exhibit A to the Sale Motion (the "APA"), including as it may be modified by agreement

between the Debtor and the successful bidder for the Assets.  By the APA, FBTS has agreed to pay $7,500,000 for the Assets, subject to certain adjustments customary for a sale of a business as a going concern, as set forth in the APA.

The Assets are subject to various liens and security interests, including those senior secured liens and security interests on the Assets asserted by Capital One, National Association ("Capital One") and Fifth Third Bank ("Fifth Third"), acting through Capital One as their agent (Capital One and Fifth Third as lenders, the "Lenders", and Capital One as agent, the "Agent"), and other secured creditors whose claims and liens are described in the Sale Motion.  Pursuant to the APA and Section 363 of the Bankruptcy Code, the Assets will be sold free and clear of all such liens, claims, and interests, whether consensual or arising by operation of law including without limitation rights and interests arising under applicable state or federal law (including the Bankruptcy Code), with all such liens, claims, and interests to attach with equal effect and priority to the proceeds of the Proposed Sale.

### *To Prospective Competing Bidders To Acquire The Assets:*

The Proposed Sale is to be governed by the procedures (the "Sale Procedures") approved by (and attached as Exhibit A to) the Order (A) Approving Procedures Governing Debtor's Proposed Sale of Substantially All Assets of Futures Behavior Therapy Center, LLC, Including Certain Unexpired Leases and Executory Contracts, Pursuant to Sections 363 and 365 of the Bankruptcy Code, Free and Clear of Liens, Claims, and Interests; (B) Approving Form and Manner of Notice of Sale; (C) Approving Debtor's Assumption of Asset Purchase Agreement Pursuant to Section 365 of the Bankruptcy Code; and (D) Granting Related Relief entered by the Bankruptcy Court on _____, 2021 [Docket No. ___] (the "Sale Procedures Order").  **If you are interested in submitting a bid to purchase the Assets or any substantial portion thereof, please contact the Debtors' investment banker, Eric Coburn of Duff & Phelps Securities, LLC, Telephone: (917) 692-6283, Email: Eric.Coburn@duffandphelps.com, in order (i) to obtain additional information about the Assets and to arrange for execution and delivery to the Debtors of a confidentiality agreement pursuant to which such additional information will be provided, and (ii) to obtain a copy of the Sale Procedures containing the terms and conditions governing the submissions of bids to purchase the Assets.  *Please do not contact the Debtors or their employees directly*.  Offers to purchase the Assets must comply with the Sale Procedures to be considered for acceptance by the Debtor and approval by the Bankruptcy Court.  In accordance with the Sale Procedures, competing purchase offers must be submitted by no later than February 3, 2021 at 4:00 p.m. (prevailing Eastern Time).**

### *To Non-Debtor Parties To Proposed Assumed Contracts:*

The Assets to be sold under the APA are expected to include Futures' rights under two unexpired leases of real property covering locations at which Futures operates its facilities and Futures' rights under many if not most of its executory contracts relating to its business (all such leases and contracts, collectively, the "Assumed Contracts"), which rights are to be transferred through the Debtor's assumption of the Assumed Contracts, and assignment of the Assumed Contracts to FBTS or such other Winning Bidder, pursuant to Section 365 of the Bankruptcy Code.  The order of the Bankruptcy Court approving the sale of the Assets and the assumption

2

and assignment of the Assumed Contracts will also serve to bar any and all claims arising out of the Assumed Contracts (subject to the rights of non-Debtor parties to such agreements to cure of existing defaults and adequate assurance of future performance, in accordance with Section 365 of the Bankruptcy Code), and claims for successor liability. ***The specific Assumed Contracts to be designated for assumption and assignment to the Winning Bidder upon the closing of the Proposed Sale will be determined by the Debtor and the Winning Bidder at or incident to the closing. To facilitate such assumption and assignment of the Assumed Contracts, the Debtor by the Sale Motion is seeking authority to assume and assign all unexpired leases and executory contracts that prospective purchasers might reasonably be expected to have an interest in acquiring. The Debtor will notify all non-Debtor parties to such leases and contracts of the potential assumption and assignment by a separate notice that will set forth procedures governing objections to the proposed assumption and assignment of the Assumed Contracts, including with respect to asserted cure payments or adequate assurance of future performance necessary to permit the proposed assumption and assignment.***

>           ***To All Creditors And Parties In Interest:***

**ANY OBJECTIONS TO THE SALE MOTION** must (i) be in writing, (ii) state with particularity the grounds for the objection and why the sale of the Assets should not be authorized, (iii) conform to the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, (iii) be filed with the Office of the Clerk, United States Bankruptcy Court, 300 State Street, Springfield, Massachusetts 01105, no later than 4:00 p.m. (prevailing Eastern Time) on February 12, 2021 (the "Objection Deadline"), and (iv) be served so as to be received by the Objection Deadline by the following parties (the "Notice Parties"):

>   (a)    attorneys for the Debtors, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, Attn: Michael J. Goldberg, E-mail: goldberg@casneredwards.com.

>   (b)    attorneys for the Agent, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL 60661-3693, Attn: Attn: Paul T. Musser, Esq., E-mail: paul.musser@katten.com.

>   (c)    attorneys for FBTS, Quarles & Brady LLP, 411 East Wisconsin Avenue, Suite 2400 , Milwaukee, WI 53202-4426, Attn: Ryan P. Haas, Esq., E-mail: Ryan.Haas@quarles.com and Christopher Combest, Esq., E-mail: Christopher.Combest@quarles.com.

>   (d)    the Office of the United States Trustee, 446 Main Street, 14th Floor, Worcester, MA 01608, Attn: Stephen Meunier, Esq., E-mail: stephen.meunier@usdoj.gov.

Objections to the Sale Motion (or to assumption and assignment of any Assumed Contract) will be governed by Fed. R. Bankr. P. 9014.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Sale Hearing") will be held before the Honorable Elizabeth D. Katz, United States Bankruptcy Judge on February 16,

2021 at 12:30 p.m. (prevailing Eastern Time) to consider (i) approval of the Sale Motion and the sale of the Assets to the Winning Bidder, and (ii) any objections to assumption and assignment of the Assumed Contracts. Instructions with respect to the participation in the Sale Hearing are set forth in greater detail in a separate Order Regarding Hearing by Zoom Video Transmission attached to this Notice.

**PLEASE TAKE FURTHER NOTICE THAT** any interested party requesting additional information with respect to the Proposed Sale or with respect to submitting a bid to purchase the Assets may (in addition to contacting Eric Coburn of Duff & Phelps as set forth above) contact counsel to the Debtors, Michael J. Goldberg, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, Phone (617) 426-5900, E-mail: goldberg@casneredwards.com, provided that notwithstanding any information which may be provided, all entities submitting an offer shall be relying upon their own independent due diligence and analysis.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Sale Motion, the Sale Procedures , and the APA may be obtained, at no cost, by making a written request to undersigned counsel to the Debtors.

Dated: _____, 2021

COMMUNITY INTERVENTION SERVICES, INC.,
COMMUNITY INTERVENTION  SERVICES
HOLDINGS, INC., SOUTH BAY MENTAL
HEALTH CENTER, INC.,  and FUTURES
BEHAVIOR THERAPY CENTER, LLC

By their attorneys,

*/s/ A. Davis Whitesell*
Michael J. Goldberg (BBO #551869)
A. Davis Whitesell (BBO #551462)
Hanna J. Ciechanowski (BBO #705222)
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210
Tel: 617-426-5900
Email: whitesell@casneredwards.com

**<u>Exhibit C</u>**

[Proposed Assumed Contracts Notice]

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

_____

|   |   |   |
|---|---|---|
| In re: | ) |  |
|  | ) | Chapter 11 |
| COMMUNITY INTERVENTION SERVICES, INC., | ) |  |
| COMMUNITY INTERVENTION SERVICES | ) |  |
| HOLDINGS, INC., SOUTH BAY MENTAL HEALTH | ) | Case No. 21-40002-EDK |
| CENTER, INC., and FUTURES BEHAVIOR | ) |  |
| THERAPY CENTER, LLC | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |

_____

**NOTICE OF DEBTOR'S PROPOSED ASSUMPTION AND ASSIGNMENT OF
UNEXPIRED LEASES AND EXECUTORY CONTRACTS INCIDENT TO SALE
OF SUBSTANTIALLY ALL ASSETS OF FUTURES BEHAVIOR THERAPY
CENTER, LLC, AND OF RELATED HEARING AND OBJECTION DEADLINE**

To the Non-Debtor Parties to the Unexpired Leases and Assumed Contracts Listed on Attached
Exhibit A (the "Contract Parties"), and to Other Parties in Interest:

**PLEASE TAKE NOTICE THAT**, pursuant to Sections 105, 363 and 365 of the
Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 6006, and pursuant to the Debtor's
Motion For Authority to Sell Substantially All Assets of Futures Behavior Therapy Center, LLC,
Including Certain Unexpired Leases and Executory Contracts, Pursuant to Sections 363 and 365
of the Bankruptcy Code, Free and Clear of Liens, Claims, and Interests filed on January 5, 2021
[Docket No. 10] (the "Sale Motion"), Futures Behavior Therapy Center, LLC ("Futures" or the
"Debtor") intends to sell substantially all of its assets (collectively, the "Assets"), to FBTC
Transitional Sub, LLC, a Delaware limited liability company ("FBTS"), or its eligible designee,
or to such other entity that submits the highest or otherwise best offer to acquire the Assets as
determined through the sale process to be governed by the sale procedures established by the
Bankruptcy Court (the "Proposed Sale"), and, incident thereto, to assume and assign to the
Bankruptcy Court-approved purchaser of the Assets ("Purchaser") the unexpired leases and
executory contracts listed on attached Exhibit A (collectively, the "Assumed Contracts").  The
order of the Bankruptcy Court approving the sale of the Assets will also serve to bar any and all
claims arising out of the Assumed Contracts (subject to the rights of non-Debtor parties to the
Assumed Contracts to cure of existing defaults and adequate assurance of future performance, in
accordance with Section 365 of the Bankruptcy Code), and claims for successor liability.  The
Debtor has determined that the amount to be paid to cure existing prepetition arrearages or
defaults under each Assumed Contract is as set forth in Exhibit A for such Assumed Contract in
the column entitled "Cure Amount" (the "Cure Amounts").

***Each Contract Party should review the List of Assumed Contracts attached as Exhibit
A and locate its name and the contract to which it is a party that is proposed to be assumed by***

*the Debtor and assigned to Purchaser incident to the closing of the sale of the Assets.  The List of Assumed Contracts lists the Contract Parties in alphabetical order, identifies the affected contracts, and specifies for each affected contract the Cure Amount determined by the Debtor to be owing under such contract as of January 5, 2021.*

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to Section 365 of the Bankruptcy Code and Fed. R. Bankr. P. 6006, objections to the proposed assumption and assignment of the Assumed Contracts, any claim for cure of defaults in excess of the Cure Amounts or adequate assurance of future performance pursuant to Section 365(b) or (f) of the Bankruptcy Code, or any other objection to the proposed assumption and assignment of the Assumed Contracts (such objections, "Cure Objections"), must be stated in writing with particularity and must be filed with the Office of the Clerk, United States Bankruptcy Court, 300 State Street, Springfield, Massachusetts 01105, no later than 4:00 p.m. (prevailing Eastern Time) on February 12, 2021 (the "Objection Deadline"), and a copy served upon each of the following parties (the "Notice Parties") so as to be received by such Objection Deadline:

(a)     attorneys for the Debtors, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, Attn:  Michael J. Goldberg, E-mail: goldberg@casneredwards.com.

(b)     attorneys for the Agent, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL 60661-3693, Attn: Attn:  Paul T. Musser, Esq., E-mail: paul.musser@katten.com.

(c)     attorneys for FBTS, Quarles & Brady LLP, 411 East Wisconsin Avenue, Suite 2400 , Milwaukee, WI 53202-4426, Attn:  Ryan P. Haas, Esq., E-mail: Ryan.Haas@quarles.com and Christopher Combest, Esq., E-mail: Christopher.Combest@quarles.com.

(d)     the Office of the United States Trustee, 446 Main Street, 14th Floor, Worcester, MA  01608, Attn: Stephen Meunier, Esq., E-mail: stephen.meunier@usdoj.gov.

The particular procedures governing Cure Objections are set forth in attached Exhibit B.  Cure Objections will be governed by Fed. R. Bankr. P. 9014.

**PLEASE TAKE FURTHER NOTICE THAT** a videoconference hearing to consider approval of the proposed assumption and assignment of the Assumed Contracts, and any Cure Objections, will be held concurrently with the hearing to consider approval of the proposed sale of the Assets (the "Sale Hearing") before the Honorable Elizabeth D. Katz, United States Bankruptcy Judge, 300 State Street, Springfield, Massachusetts, on February 16,2021 at 12:30 p.m. (prevailing Eastern Time). Instructions with respect to participation in the Sale Hearing are set forth in greater detail in a separate Order Regarding Hearing by Zoom Video Transmission attached to this Notice.

**PLEASE TAKE FURTHER NOTICE THAT** any Contract Party seeking additional information with respect to the Proposed Sale or with respect to the Debtor's proposed

2

assumption and assignment of any Assumed Contract may contact counsel to the Debtors, Michael J. Goldberg, Casner & Edwards, LLP, 303 Congress Street, Boston, MA 02210, telephone (617) 426-5900, E-Mail: goldberg@casneredwards.com.  In addition, copies of the Sale Motion may be obtained from the Office of the Clerk, United States Bankruptcy Court, 300 State Street, Springfield, Massachusetts 01105, or by making a written request to undersigned counsel to the Debtors.

Dated: _____, 2021          COMMUNITY INTERVENTION SERVICES, INC.,
                                        COMMUNITY INTERVENTION  SERVICES
                                        HOLDINGS, INC., SOUTH BAY MENTAL
                                        HEALTH CENTER, INC.,  and FUTURES
                                        BEHAVIOR THERAPY CENTER, LLC

                                        By their attorneys,


                                        */s/ A. Davis Whitesell*_____
                                        Michael J. Goldberg (BBO #551869)
                                        A. Davis Whitesell (BBO #551462)
                                        Hanna J. Ciechanowski (BBO #705222)
                                        Casner & Edwards, LLP
                                        303 Congress Street
                                        Boston, MA  02210
                                        Tel: 617-426-5900
                                        Email: whitesell@casneredwards.com

**Exhibit A to Assumed Contracts Notice**

[List of Potential Assumed Contracts and Cure Amounts]

[TO BE PROVIDED]

## Exhibit B to Assumed Contracts Notice

## Procedures Governing Cure Objections

Cure Objections.  Any non-Debtor party to an Assumed Contract (a "Contract Party") seeking to assert that any defaults, conditions or pecuniary losses under any Assumed Contract (other than as set forth in the column entitled "Cure Amount" for such Assumed Contract on forgoing Exhibit A to this Notice) must be cured or satisfied in order for such contract to be assumed and/or assigned (collectively, the "Cure Obligations") or who otherwise objects to the proposed assumption and assignment of such Assumed Contract for any reason, shall be required to file and serve an objection ("Cure Objection") setting forth with specificity any and all Cure Obligations which such party asserts must be cured or satisfied with respect to such Assumed Contract and any and all objections to the proposed assumption and assignment of such Assumed Contract.

Cure Objection Deadline.  To be considered a timely Cure Objection, the Contract Party interposing the Cure Objection must file it with the Bankruptcy Court, and serve a copy of such Cure Objection upon each of the Notice Parties, **so as to be filed and received not later than 4:00 p.m. (prevailing Eastern Time) on February 12, 2021 (the "Cure Objection Deadline")**.  The Debtor may, in its sole discretion, extend the Cure Objection Deadline once or successively for any Contract Party without further notice, but is not obligated to do so and, in the event of any such extension, shall promptly file notice of same with the Bankruptcy Court.

Failure to File Cure Objection.  Unless a Cure Objection is filed and served by a party to an Assumed Contract by the Cure Objection Deadline, the Bankruptcy Court may enter an order authorizing or effecting the assumption and assignment of such Assumed Contract without regard to any objection such party may have.

Waiver of Cure Objection.  Any Contract Party that fails to file and serve a Cure Objection as provided above shall, absent an order of the Bankruptcy Court determining that such failure is the result of excusable neglect, be deemed to have waived and released any Cure Obligation and shall be forever barred and estopped from objecting to the validity or enforceability of the assumption and assignment of the Assumed Contract, and from asserting or claiming against the Debtor, any purchaser of the Assets, or other assignee of the relevant Assumed Contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assumed Contract for the period prior to the Cure Objection Deadline.

Contents of Cure Objection.  A Cure Objection shall set forth the cure amount the objecting Contract Party asserts is due, the period(s) to which such amounts relate, the specific types and dates of any alleged defaults, pecuniary losses and conditions to assignment, and the support therefor, and any other information necessary to establish the basis for the Cure Objection.  All documents or writings establishing the basis for the Cure Objection must be attached to the Cure Objection, provided, however, that although the underlying obligation itself must be asserted in detail, specific dollar amounts for

unliquidated claims or adjustments not yet known (collectively, the "Unliquidated Charges"), as set forth in the relevant Assumed Contract, need not be included in the Cure Obligations.  A statement indicating the nature of the Unliquidated Charges and the period(s) in which they accrued must be included.  The amount of any Unliquidated Charges asserted in compliance with these procedures shall be determined by further order of the Bankruptcy Court or by stipulation between the Debtor and the affected Contract Party.

Cure Objection Hearing.  The hearings to resolve Cure Objections, if any, shall be held concurrently with the Sale Hearing (or at such other earlier or later date as the Bankruptcy Court may designate), as set forth in the preceding Notice to which these Cure Objection procedures are attached.  If any Assumed Contract is assumed and assigned prior to resolution of a Cure Objection, appropriate means for assuring payment of a liquidated Cure Obligation timely asserted by the Contract Party (or such lower amount as may be fixed by the Bankruptcy Court) shall be established by order of the Bankruptcy Court or mutual agreement of the parties.

Reservation of Rights.  The Debtor reserves the right to remove any Assumed Contract from the Proposed Sale and to withdraw the request to assume and assign any Assumed Contract, including as directed by the Winning Bidder, in which event an appropriate adjustment may be made to the purchase price for the Assets to reflect the exclusion of the Assumed Contract from the sale.

Limitation of Objection.  A timely filed and served Cure Objection shall reserve the objecting Contract Party's rights respecting its Cure Obligation but shall not be deemed to constitute an objection to the relief generally requested in the Sale Motion.

Conditional Nature of Authorized Assumption and Assignment.  Notwithstanding any authority granted to the Debtor to assume and assign the Assumed Contracts, the assumption and assignment of any particular Assumed Contract shall become effective only upon the closing of a sale transaction involving the express designation of such contract as an "Assumed Contract" (or equivalent) under the operative transaction documents.

**Exhibit D**

[Supplemental Disclosure]

[Attached]

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

_____
                                                    )
In re:                                              )
                                                    )         Chapter 11
COMMUNITY INTERVENTION SERVICES, INC.,              )
COMMUNITY INTERVENTION SERVICES                     )
HOLDINGS, INC., SOUTH BAY MENTAL HEALTH             )         Case No. 21-40002-EDK
CENTER, INC., and FUTURES BEHAVIOR                  )
THERAPY CENTER, LLC                                 )
                                                    )         (Jointly Administered)
                                       Debtors.     )
_____)

**SUPPLEMENTAL DISCLOSURE REGARDING DEBTORS'
MOTION TO SELL SUBSTANTIALLY ALL ASSETS OF SOUTH BAY
MENTAL HEALTH CENTER, INC. AND CERTAIN ASSETS OF
COMMUNITY INTERVENTION SERVICES, INC.**

The debtors Community Intervention Services, Inc. ("CIS"), Community Intervention

Services Holdings, Inc. ("Holdings"), South Bay Mental Health Center, Inc. ("South Bay") and

Futures Behavior Therapy Center, LLC ("Futures" and, together with CIS, Holdings and South

Bay, the "Debtors") submit this Supplemental Disclosure to assist the Bankruptcy Court and

creditors in connection with their consideration of the Debtors' Motion For Authority to Sell

Substantially All Assets of Futures Behavior Therapy Center, LLC, Including Certain Unexpired

Leases and Executory Contracts, Pursuant to Sections 363 and 365 of the Bankruptcy Code, Free

and Clear of Liens, Claims, and Interests [Doc. No. 10] (the "Sale Motion").  The Sale Motion, a

copy of which accompanies this Supplemental Disclosure, contains a detailed description of the

proposed sale of the assets of Futures (the "Proposed Sale").  In addition to the information

contained in the Sale Motion, the Debtors provide the following supplemental information:

1.      The proposed purchaser of the assets of Futures (the "Sale Assets") is FB

Transitional Sub, LLC, a Delaware limited liability company formed to acquire the Sale Assets

by The Mentor Network (the "Purchaser").  The Mentor Network, headquartered in Boston, is a national leader in providing behavioral health services, and the Debtors therefore believe that its acquisition affiliate is well positioned to continue the business of Futures without interruption or erosion in the quality of services provided.  More information on The Mentor Network is available on its website, at https://www.thementornetwork.com.

2.      Prior to the commencement of the Debtors' Chapter 11 cases, the Debtors agreed to implement a management incentive program, under which key members of the Debtors' executive team—some of whom are considered "insiders" under the Bankruptcy Code--would receive incentive compensation upon the closing of a sale of the Debtors' assets (the "Incentive Program").  A description of the Incentive Program is attached to this Supplemental Disclosure at Exhibit A.  The Debtors' senior secured creditors, Capital One, National Association and Fifth Third Bank (the "Senior Secured Creditors"), have agreed that amounts due under the Incentive Program resulting from the consummation of the Proposed Sale will be funded by the Senior Secured Creditors by means of a carve-out from the proceeds of the Proposed Sale received by the Senior Secured Creditors.[4]  The Debtors have also committed to pay up to $400,000 under a retention plan for non-insider employees, and will seek Court authority to make any such payments from estate funds;  it is possible that these payments will instead be funded from a carve-out of the Senior Secured Creditors' collateral proceeds from the Debtors' planned asset sales.  All of the foregoing payments will be made only if and at such time as there are consummated sales of the Debtors' assets.

3.      Section 363(b)(1) of the Bankruptcy Code places certain restrictions on sales of assets involving "personally identifiable information" collected by a debtor in connection with

---

[4] Because the funding for the Incentive Program is being supplied by the Senior Secured Creditors from closing proceeds, the Debtors do not believe that Bankruptcy Code Section 503(c) applies to the Program.

services provided by such debtor.  To the extent Futures collects such "personally identifiable

information" from its clients that will be part of the Sale Assets, the Asset Purchase Agreement

executed by Futures and the Purchaser dated January 5, 2021 (the "APA") provides, at Section

6.13, as follows:

> Following the Closing, (i) Purchaser shall maintain the Client Records in such a
> manner as to protect their integrity, ensure their confidentiality and proper use,
> and ensure their accessibility and availability to Seller and Seller's clients or their
> authorized representatives as required by Law….

Respectfully submitted,

*/s/ Michael J. Goldberg*
Michael J. Goldberg (BBO #551869)
A. Davis Whitesell (BBO #551462)
Hanna J. Ciechanowski (BBO #705222)
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210
Tel: 617-426-5900
Date: January __, 2021            Email: goldberg@casneredwards.com

**EXHIBIT A**

| | | Futures | | AFS/FBR | | South Bay | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| Gross Purchase Price | | $ | 7,500,000 | $ | 8,000,000 | $ | 32,000,000 | $ | 47,500,000 |
| **Name** | **Position** | % | Amount | % | Amount | % | Amount | % | Amount |
| Andrew Calkins | CEO | 1.50% | $ 112,500 | 1.50% | $ 120,000 | 1.81% | $ 579,167 | 1.71% | $ 811,667 |
| Matt Lesniewski | CFO | 1.25% | $ 93,750 | 0.75% | $ 60,000 | 0.90% | $ 289,583 | 0.93% | $ 443,333 |
| Pam Burke | Futures Pres | 0.50% | $ 37,500 | | | | | 0.08% | $ 37,500 |
| Brianne Smith | AFS Pres | | | 1.00% | $ 80,000 | | | 0.17% | $ 80,000 |
| Mark Nemenz | FBR Pres | | | 0.50% | $ 40,000 | | | 0.16% | $ 77,500 |
| Sara Hart | SB President | | | | | 0.16% | $ 50,000 | 0.11% | $ 50,000 |
| Other | TBD | 0.50% | $ 37,500 | | | | | | |
| **Total** | | 3.75% | $ 281,250 | 3.75% | $ 300,000 | 2.87% | $ 918,750 | 3.16% | $ 1,500,000 |

NOTES:

1.      The Debtors' Management Incentive Plan (the "Incentive Plan") provides for payments to the members of the Debtors' executive management team  based on (i) the consummated transactions involving  Access Family Services, Inc. ("AFS") and Family Behavioral Resources, Inc. ("FBR"), (ii) the purchase price expected to be received in connection with the asset sales involving Futures Behavior Therapy Center, LLC ("Futures") and South Bay Mental Health Center, Inc. ("South Bay") and Community Intervention Services, Inc. ("CIS"), and (iii) the application of the "cap" discussed in note 2, below.  If either of the Futures or South Bay/CIS transactions are not consummated, or if the terms thereof are modified, the above percentages and/or amounts may change as well.

2.      The maximum amount that may be paid to the participants in the Incentive Program from the carve-out provided by the Senior Secured Creditors is $1,500,000.  $300,000 of the Incentive Program amount was already paid in connection with the sale of the assets of AFS and FBR; thus, the cap on the Futures and South Bay/CIS transactions is $1,200,000.  To the extent that the aggregate incentive payments exceed the remaining $1,200,000 cap, the incentive payments payable to Mr. Calkins and Mr. Lesniewski in connection with the South Bay sale are reduced proportionately.

3.      Pursuant to the Debtors' agreement with the Senior Secured Creditors respecting the carve-out, all payments to be made under the Incentive Program are conditioned upon, *inter alia*, the closing of the applicable asset sale, and the continued employment of the Incentive Program participant through closing.